**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Dale Fulton, <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | ) Case No. 1:15-CV-53 |
| | ) |
| vs. | ) |
| | ) |
| Western Brown Local School | ) |
| District Board of Education, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

O R D E R

This matter is before the Court on motions to dismiss filed by Defendants Donald Rabold and Brown County Educational Service Center (Doc. No. 12) and Western Brown Local School District Board of Education (Doc. No. 13). For the reasons that follow, the motion to dismiss filed by Defendants Rabold and Brown County Educational Service Center is well-taken and is **GRANTED;** Defendant Western Brown Local School District Board of Education's motion to dismiss is **GRANTED IN PART AND DENIED IN PART.**

I. Background

Plaintiffs in this case, Dale Fulton and Kelly Bishop-Fulton, allege that their minor son, E.F., was subjected to a course of racial harassment by teachers and students while he was enrolled at Western Brown Middle School and Western Brown High School. Plaintiffs allege that the Western Brown Local School District Board of Education ("the School Board") failed to remedy and indeed was deliberately indifferent to the need to remedy the racial harassment that E.F. was experiencing and that Defendants Donald

1

Rabold and Brown County Educational Service Center ("Brown County ESC")[1] conducted an inadequate investigation into the harassment to which E.F. was subjected. Plaintiffs, on behalf of E.F., bring discrimination claims against the School Board pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and against each of the Defendants pursuant to 42 U.S.C. § 1983. Defendants each move to dismiss Plaintiffs' § 1983 claims on the grounds of failure to state a claim for relief. The Court, therefore, adopts the set of facts set out in the Second Amended Complaint.

Plaintiffs Dale Fulton and Kelly Bishop-Fulton are the parents of E.F., a biracial male of African-American and Caucasian descent. Second Amended Complaint (Doc. No. 10) ¶ 4. E.F. transferred from school in Cincinnati into Western Brown Middle School in 2011. Id. ¶ 5. The School Board is responsible for the administration of both Western Brown Middle School and Western Brown High School. Id. ¶ 6. Less than one percent of the students within the Western Brown School District is African-American. Id. ¶ 7. Plaintiffs

---

[1] The Ohio General Assembly created the educational service center system to "support state and regional education initiatives and efforts to improve school effectiveness and student achievement." Ohio Rev. Code § 3312.01(A). Additionally, educational service centers "implement state or federally funded initiatives assigned to the service centers by the general assembly or department of education." Ohio Rev. Code § 3312.01(B). The purpose of the education service center system is to "reduce the unnecessary duplication of programs and services and provide for a more streamlined and efficient delivery of educational services without reducing the availability of services needed by school districts and schools." Ohio Rev. Code § 3312.01(A). By statute, each educational service center is comprised essentially of the territory of the county in which it is located, Ohio Rev. Code § 3311.05(A), but may be combined with up to five other educational service centers to form one educational service center. Ohio Rev. Code § 3311.053. School districts must receive from educational service centers the services that by statute they are required to provide. Ohio Rev. Code § 3312.01(E). An educational service center is a political subdivision of the State of Ohio. Schmitt v. Educational Serv. Ctr. of Cuyahoga Cnty., No. 97623, 2012 WL 2819401, at *3 (Ohio Ct. App. May 17, 2012).

allege that E.F. was subjected to racial harassment from both teachers and students in the School District beginning in November 2011.

Plaintiffs claim that in November 2011, Plaintiff's middle school social studies teacher, John Baird, told the students in E.F.'s class that Cincinnati could be a dangerous place to live and that they should take a gun when visiting Cincinnati because they could take a wrong turn and end up in a neighborhood that is "not white." Baird also said that it would be "very scary" if that happened. Second Amended Complaint ¶ 17. E.F. was the only African American student in the class and had just recently transferred from a school in Cincinnati. Id. ¶ 19. Baird apologized to E.F. and the class after Plaintiffs complained to the principal but he did not retract his negative racial comments about Cincinnati. Id. ¶ 21 Additionally, Baird gave E.F.'s class a PowerPoint presentation on "nice" areas of Cincinnati to visit. Id.

In or about January 2012, E.F. was subjected to ongoing racial comments from other students such as "go back to the ghetto where you came from" and "I'm gonna punch you in your face. You think you are white." Id. ¶ 22. E.F. reported these comments to the assistant principal, Lillian Cook. Cook questioned the students who made these comments but no known discipline was administered. Id. ¶ 23.

On or about April 30, 2012, a female student called E.F. a "nigger" while they were playing basketball in the school gym. E.F. reported the incident to Cook but no known discipline was administered. Id. ¶ 27.

In May 2012, Dale Fulton met with the Principal Christopher Burrows to discuss ongoing lunch table discussions in which other students made derogatory comments to E.F. such as black people "never being as good as white people at anything." Id. ¶ 24. One

3

student received an in-school suspension from Burrows as a result, but the other students began to alienate and ignore E.F. Id. ¶ 25.

In February 2013, when he was enrolled at Western Brown High School, other students repeatedly told E.F. that "blacks" are thieves and criminals. Another student told E.F. that "blacks" were only good athletes because "they have extra muscles in their legs." Id. ¶ 28. E.F. reported these comments to Principal Heather Cooper. He also told the Cooper that these comments made him uncomfortable and asked the students multiple times to stop making them. Id. Cooper, however, did not follow-up on E.F.'s complaints and no known discipline was administered to any other students. Id. ¶30.

In October 2013, students blamed E.F. for reporting cheating in chemistry class and repeatedly called him a "nigger-nark." Id. ¶ 31. The chemistry teacher told the students that the report did not come from E.F. The students, however, continued to call E.F. racial epitaphs, and the School Board allegedly took no action to stop the harassing behavior. Id. ¶ 32.

In November 2013, E.F.'s American history teacher, Wendel Donathon, told his class that "the white man is the most discriminated against group in the history of country." Donathon also attributed white men's loss of jobs to Affirmative Action. Id. ¶ 31. E.F. was the only African-American student in the class at the time and felt alienated by the class discussions. Id. ¶ 34. Additionally, Donathon regularly marked correct answers incorrect on E.F.'s school work. Dale Fulton met with the Donathon on numerous occasions to discuss the mismarked school work and the racial comments to which E.F. was subjected. Donathon stated that mismarking the school work was a mistake, but he only credited

4

points back to E.F. after Dale Fulton complained about the inaccurate grading. Id. ¶¶ 35-36.

In January 2014, E.F. and one of his basketball teammates overheard another teammate state that "E.F. is the reason I hate black people." The teammate reported the comment to the basketball coach. The other student, however, denied making the comment and no known discipline was administered. Id. ¶¶ 37-38.

In February 2014, it was discovered that someone had carved "No Niggers Allowed" on the chalkboard in the visiting team's locker room. The visiting team had a high percentage of African-American students and was from Cincinnati. Id. ¶ 39. The graffiti was removed from the chalkboard but the school administrators did not address the incident with staff members or provide guidance on how to address students' comments and concerns about the incident. Id. ¶ 40.

On March 10, 2014, E.F. walked into class on crutches, carrying a backpack, because of an injury. The school ordinarily does not permit students to carry backpacks but E.F. was granted an exception because of his injury. Id. ¶ 41. One student, however, commented that he wished he was "black and had crutches so he could bring a gun to school and start shooting people." Id. ¶ 42.

Plaintiffs each complained on multiple occasions to school administrators and members of the School Board about the racial comments and harassment E.F. was subjected to while he was enrolled in Western Brown School District schools. Id. ¶ 43. The bylaws of the School District require teachers to report incidents of racial discrimination to school administrators. Id. ¶ 44.

On March 14, 2014, E.F. gave notice that he was transferring out of the Western Brown Local School District due to pervasive and ongoing racial harassment and because

5

he feared for his safety. Id. ¶ 45. Principal Cooper, under the direction of the School Board, contacted Defendant Brown County ESC to assist in investigating complaints of ongoing racial harassment, discrimination, and bullying at Western Brown High School. Id. ¶ 46. Brown County ESC assigned Defendant Rabold to complete an investigation and report on Plaintiffs' claims of harassment, discrimination and bullying even though the School Board knew or should have known that Rabold had never been trained to conduct such an investigation. Id. ¶¶ 46, 47, 49, 50.

During his investigation, Rabold interviewed mostly minority students about E.F. complaints of racial discrimination and harassment. Id. ¶ 52. Despite multiple statements from these students about racial discrimination and bullying, Rabold concluded in his report that the School Board and school administrators were not at fault despite their repeated failure to address pervasive racial discrimination in the district. Id.

After E.F. transferred to a new high school in Cincinnati, he was required by the rules of the Ohio High School Athletic Association ("OHSAA") to sit out 50% of the school's basketball games. The OHSAA will waive this rule if the student transferred due to harassment, intimidation or bullying. The OHSAA, however, relied on Rabold's report to deny E.F. a waiver of this rule. E.F., therefore, was ineligible to play in half of his school's basketball games during his junior year. Id. ¶¶ 53-56.

Plaintiffs allege that each of the Defendants was deliberately indifferent to the racial harassment and discrimination E.F. was subjected to while he was a student in the Western Brown School District. Plaintiffs further allege that the School Board displayed deliberate indifference to E.F. by failing to appoint and publish the name and contact number of an anti-harassment compliance officer as required by the district's by-laws. Id. ¶¶ 57-58.

Plaintiffs also allege that Defendants discriminated against E.F. by treating him differently from other similarly-situated students by continually subjecting him to racial comments from teachers and students. Plaintiffs also allege that Defendants discriminated against E.F. by forcing him to transfer to a new school by failing to investigate and address his complaints until after he transferred to a new school. In addition to having to miss participating in his high school basketball program, Plaintiffs allege that E.F. has suffered and continues to suffer from severe psychological trauma, depression, distress, nervousness, anxiety, and fear. Id. ¶¶ 59-60.

As indicated above, Plaintiffs have sued the School Board for racial discrimination under Title VI of the Civil Rights Act of 1964 and each of the Defendants for racial discrimination pursuant to 42 U.S.C. § 1983. Defendants each move the Court to dismiss Plaintiffs' § 1983 claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. The School Board argues that Plaintiffs' § 1983 claim must be dismissed because it fails to allege sufficient facts to conclude that E.F. was discriminated against because of a custom or policy of the School Board. Additionally, the School Board moves to dismiss Plaintiffs' claim for punitive damages under § 1983. Similarly, Defendant Brown County ESC argues that the complaint fails to allege facts showing that the discrimination and harassment E.F. experienced resulted from a custom or policy of Brown County ESC. Defendant Rabold argues that the complaint against him should be dismissed because it fails to allege facts showing that he personally discriminated against E.F.

Defendants' motions to dismiss have been fully briefed and are now ready for disposition.

II. <u>Rule 12(b)(6) Standard of Review</u>

A motion to dismiss for failure to state a claim operates to test the sufficiency of the complaint. The court must construe the complaint in the light most favorable to Plaintiff, and accept as true all well-pleaded factual allegations. <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Roth Steel Products v. Sharon Steel Corp.</u>, 705 F.2d 134, 155 (6th Cir. 1983). The court need not accept as true legal conclusions or unwarranted factual inferences. <u>Lewis v. ACB Business Servs., Inc.</u>, 135 F.3d 389, 405 (6th Cir. 1998).

The complaint, however, must contain more than labels, conclusions, and formulaic recitations of the elements of the claim. <u>Sensations, Inc. v. City of Grand Rapids</u>, 526 F.3d 291, 295 (6th Cir. 2008) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). The factual allegations of the complaint must be sufficient to raise the right to relief above the speculative level. <u>Id.</u> Nevertheless, the complaint is still only required to contain a short, plain statement of the claim indicating that the pleader is entitled to relief. <u>Id.</u> (citing <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007)). Specific facts are not necessary and the pleader is only required to give fair notice of the claim and the grounds upon which it rests. <u>Id.</u> To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Mere conclusions, however, are not entitled to the assumption of truth. <u>Id.</u> at 678-89. A claim is facially plausible if it contains content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u> at 678. Plausibility is not the same as probability, but the complaint must plead more than a possibility that the defendant has acted

unlawfully. Id. If the complaint pleads conduct which is only consistent with the defendant's liability, it fails to state a plausible claim for relief. Id.

### III. Analysis

#### A. Municipal Liability Under 42 U.S.C. § 1983

Section 1983 provides a remedy for persons who suffered a deprivation of their constitutional rights by persons acting under color of state law. 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"). A municipality is a "person"within the meaning of § 1983. Miller v. Calhoun Cnty., 408 F.3d 803, 813 (6th Cir. 2005). Nevertheless, a municipality cannot be held liable under § 1983 simply because one of its employees violated the plaintiff's constitutional rights. In other words, § 1983 does not impose respondeat superior liability on municipalities. Id. (citing Monell v. Department of Soc. Servs., 436 U.S. 658, 690 (1978)). Instead, in order to impose § 1983 liability on a municipality, the plaintiff must prove that the constitutional deprivation occurred as a result of an official custom or policy of the municipality. Id.

In this case, Plaintiffs allege that the School Board and Brown County ESC are liable under 42 U.S.C. § 1983 for the racial harassment E.F. experienced while he was enrolled as a student in the Western Brown Local School District. Specifically, Plaintiffs allege that these Defendants were deliberately indifferent to the racial harassment directed at E.F. by

9

students and teachers, or alternatively, that they ratified the discriminatory conduct of the students and teachers by failing to act and/or by acting without training to stop the discriminatory conduct. Both the School Board and Brown County ESC contend, however, that Plaintiffs have not pled facts showing that E.F.'s constitutional rights were violated as a result of a municipal custom or policy.

Under § 1983, a municipal "policy" is simply "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. On the other hand, a "custom" has not been officially adopted by the municipality but nevertheless is a practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. at 691. In other words, "a 'custom' is a 'legal institution' not memorialized by written law." Doe v. Claiborne Cnty., 103 F.3d 495, 508 (6th Cir. 1996).

A school district may be liable under § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment if it is deliberately indifferent to student-on-student racial harassment. Williams v. Port Huron Sch. Dist., 455 Fed. Appx. 612, 618 (6th Cir. 2012). In order to state a claim against a municipality for a constitutional violation based on deliberate indifference or inaction, the plaintiff must allege facts demonstrating:

- (1) the existence of a clear and persistent pattern of discrimination by municipal employees;

- (2) notice or constructive notice on the part of the municipality;

- (3) the municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and

- (4) that the municipality's custom was the "moving force" or direct causal link in the constitutional deprivation.

10

Arendale v. City of Memphis, 519 F.3d 587, 599-600 (6th Cir. 2008).

The issue presented by the motions of the municipal Defendants is whether Plaintiffs have pled facts demonstrating an official custom or policy of inaction to the racial harassment experienced by E.F.[2] "[A] plaintiff may demonstrate defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" Vance v. Spencer Cnty. Pub. Sch. Dist., 231 F.3d 253, 260 (6th Cir.2000) (quoting Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648 (1999)). Under this standard, Plaintiffs' complaint clearly states a claim for deliberate indifference against the School Board. On the other hand, the complaint just as clearly does not state a claim for deliberate indifference against Brown County ESC.

There is no question that, at least based on the factual allegations of the complaint, E.F. was subjected to an extended and pervasive course of racial harassment from his fellow students. Additionally, at least some of E.F.'s teachers made racially derogatory comments to E.F.'s class. Moreover, it can be inferred that at least one teacher

---

[2] The School Board's motion initially contends that the Second Amended Complaint fails to adequately allege that it had a policy of inadequately training its employees to deal with racial harassment. E.g. City of Canton v. Harris, 489 U.S. 378, 389 (1989). While the Second Amended Complaint certainly alleges that teachers and administrators of the School District were untrained in dealing with racial harassment, the gravamen of Plaintiffs' claim seems not to be that they were untrained but rather that the School Board was simply deliberately indifferent to the need to remedy the racial harassment experienced by E.F. A "failure to train" claim, however, is just one type of deliberate indifference claim. See id. at 389 (holding that the failure to train must amount to deliberate indifference). In other words, a municipality can be held liable under a deliberate indifference theory without the plaintiff having to prove that the municipality had a policy of inadequate training. Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013); Arendale, supra (setting out the elements of an "inaction" theory of municipal liability).

discriminated against E.F. on the basis of race in grading his school work. Plaintiffs complained on multiple occasions to both school administrators and members of the School Board about the harassment to which E.F. was being subjected. Second Amended Complaint ¶ 43. Nevertheless, according to the complaint, Plaintiffs complaints were essentially ignored - neither the school administrators nor the School Board took any affirmative measures to stop the harassing conduct. Discipline, with one exception, was not meted out to offending students; teachers and administrators remained uneducated and untrained on how to deal with racial harassment. Id. ¶¶ 20, 23, 27, 30, 32, 38, 40. Additionally, the School Board failed to appoint an anti-harassment compliance officer as required by its by-laws. Id. ¶ 58. Clearly, the failure of the School Board to take any steps to stop the racial harassment E.F. was experiencing, despite its awareness that such harassment was ongoing, is not reasonable and can be said to represent an official policy or custom of the School Board. See Vance, 231 F.3d at 261 ("Where a school district has actual knowledge that its efforts to remediate [discrimination] are ineffective, and it continues to use the same methods to no avail, such district has failed to act reasonably in light of known circumstances.") (Title IX harassment); McCoy v. Board of Educ., Columbus City Sch., 515 Fed. Appx. 387, 391 (6th Cir. 2013)("A failure to take any disciplinary action despite reports of repeated sexual harassment rises to the level of deliberate indifference.").[3] Similarly, the School Board's failure to appoint an anti-

---

[3] The Title VI, Title IX, and § 1983 deliberate indifference standards are more or less identical. See Williams ex rel. Hart v. Paint Valley Local Sch. Dist., 400 F.3d 360, 369 (6th Cir. 2000) (stating that the deliberate indifference standard is substantially the same under Title IX and § 1983); Williams, 455 Fed. Appx. at 618 n.6 (stating that the deliberate indifference standard is substantially the same under Title VI and § 1983).

harassment compliance officer despite its by-law requiring it do so evinces a custom or policy of deliberate indifference to the need to address claims of racial and other forms of unlawful discrimination.

In summary, then, the Second Amended Complaint adequately states a claim under § 1983 that the School Board had a policy of deliberate indifference to the racial harassment and discrimination allegedly suffered by Plaintiffs. The exact contours of Plaintiffs' claim can be fleshed out in discovery.

Plaintiffs, however, fail to allege facts showing that Brown County ESC had a policy of deliberate indifference towards racial discrimination. For instance, Plaintiffs do not allege that Brown County ESC was aware that students and teachers were discriminating against E.F. or that it had any authority to intervene to protect E.F. and/or discipline the wrongdoers had it been so aware. Plaintiffs instead base their claim against Brown County ESC on the idea that it conducted an inadequate investigation into the racial harassment experienced by E.F. and thus ratified the School Board's alleged unconstitutional conduct. But to prevail under this theory, Plaintiffs must allege facts showing that Brown County ESC had a pattern of inadequately investigating similar claims in the past. Burgess v Fischer, 735 F.3d 462, 478 (6th Cir. 2013). Plaintiffs make no such allegations in their Second Amended Complaint, and, consequently, have failed to allege facts showing a custom or policy on the part of Brown County ESC to tolerate or ratify the alleged unconstitutional conduct of the School Board.

Plaintiffs confusingly assert that the *School Board* had a custom or policy of enlisting Brown County ESC to assist with complaints of discrimination as if somehow that translates into a custom of Brown County ESC to conduct inadequate investigations into

13

discrimination claims. The Court fails to see the logic of this argument and to restate the argument is to refute it - a custom or policy of the *School Board* is not a policy of *Brown County ESC.* And the relevant inquiry here is whether Brown County ESC had a custom or policy which led to the deprivation of Plaintiffs' constitutional rights. Plaintiffs have not alleged facts demonstrating that Brown County ESC had such a custom or policy.

Accordingly, Brown County ESC is entitled to dismissal of Plaintiffs' § 1983 claim.

### B. The Individual Liability of Defendant Rabold

Plaintiffs' § 1983 claim against Defendant Rabold in his individual capacity fails for most of the same reasons their claim against Brown County ESC fails. Plaintiffs contend that Rabold conducted an inadequate investigation into the racial harassment of E.F., which subsequently resulted in E.F. being ruled ineligible for half of a basketball season at his new school. The alleged inadequacy of Rabold's investigation at most constitutes mere negligence, which is not actionable under § 1983. Frodge v. City of Newport, 501 Fed. Appx. 519, 532 (6th Cir. 2012). Moreover, Plaintiffs have not alleged facts showing that Rabold has a history or pattern of inadequately investigating claims of racial discrimination and harassment such that it can be concluded that Rabold acquiesced in, tolerated, or ratified the discrimination and harassment suffered by E.F. Id. at 533.

Accordingly, Defendant Rabold's motion to dismiss Plaintiffs' claim against him is well-taken and is **GRANTED.**

### C. Punitive Damages Under 42 U.S.C. § 1983

A plaintiff may not recover punitive damages against a municipality under 42 U.S.C. § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

Accordingly, the School Board's motion to dismiss Plaintiffs' punitive damages claim pursuant to § 1983 is well-taken and is **GRANTED.**

Conclusion

In summary, for the reasons stated above, Defendants Rabold and Brown County Educational Service Center's motion to dismiss is well-taken and is **GRANTED.** Plaintiffs' § 1983 claim against these Defendants is **DISMISSED WITH PREJUDICE.** Defendant Western Brown Local School District Board of Education's motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** Defendant's motion to dismiss Plaintiff's claim for punitive damages under § 1983 is well-taken and is **GRANTED**. Defendant's motion to dismiss the § 1983 claim itself is not well-taken and is **DENIED.**

**IT IS SO ORDERED**

Date June 23, 2015                               s/Sandra S. Beckwith
                                                 Sandra S. Beckwith
                                                 Senior United States District Judge